CHARLES RICHARDSON, ET AL., APPELLANTS, vs. W. H. HUTCHINSON, APPELLEE.

1. The effect of a consignment of goods generally is to vest the property in the consignee, but if the bill of lading is special to deliver the goods to the consignee for the use of or on account of a party not the consignee the property vests in such party.

2. In such case the bill of lading is *prima facie* evidence of the fairness of the transaction, and is sufficient to raise a presumption of property in the person for whose use and account the consignment is made.

3. Where, however, the consignment thus made is by an insolvent debtor and there are facts and circumstances from which the jury might infer that the transaction was colorable and fraudulent, and that

there was nothing due to the party on whose account the ship-
ment was made, a verdict of a jury thus finding, approved by the
Circuit Court, should not be set aside by this court.

4. General statements of an insolvent debtor as to the amount of his
indebtedness to one of two contending creditors, both the insol-
vent debtor and such one of the contending creditors failing to
give any itemized account or clear exhibit of the alleged debt,
cannot be regarded as conclusively establishing the debt in a case
surrounded with other suspicious circumstances.

Appeal from the Circuit Court for Escambia county.
The facts of the case are stated in the opinion.

*Gustavus A. Stanley* for Appellants.

*E. A. Perry* and *John C. Avery* for Appellee.

Mr. Justice Westcott delivered the opinion of the
court.

This is an action of replevin wherein Charles Richard-
son, Ephriam T. Walton and Francis N. Buck, partners
doing business in the city of Atlanta, Georgia, under the
name of Walton, Whann & Co., are plaintiffs and W. H.
Hutchinson, the Sheriff of Escambia county, is defendant.

The property, which is the subject of the suit, is nineteen
bales of cotton taken possession of by the Sheriff, under
an attachment, as the property of C. S. Yarbrough & Co.,
a firm doing business in Geneva, Alabama, and consisting
of C. S. Yarbrough, J. A. Fleming, T. J. Fleming and H.
C. Yarbrough—T. J. Fleming and H. C. Yarbrough being
the business managers of the firm. The attachment under
which the property was taken possession of by the sheriff
was issued at the instance of Sigismound Haas, " a Cotton
Commission Merchant" doing business in Mobile, Alabama,
under the name of S. Haas & Co. The defendant filed three
pleas. First. The general issue. Second. A plea denying

right of possession. Third. That the defendant was, and is entitled to the possession of the property.

Plaintiff took issue upon the pleas. There was trial and verdict for the defendant. The plaintiffs moved for a new trial upon the ground that the verdict was contrary to the evidence and contrary to the charge of the court. Their motion was denied, and there was final judgment against the plaintiffs in the sum of one thousand, forty-three and twenty-eight one-hundredth dollars damages and costs. From this judgment this appeal is taken. There were no exceptions to the charge of the court and the ground upon which a reversal is here sought is alleged error of the court in denying plaintiffs' motion for new trial.

The plaintiffs claim that the evidence shows that " the cotton in controversy was shipped at Geneva, Alabama, by the firm of C. S. Yarbrough & Co., or by a member of that firm, under a bill of lading consigned to Robbins, Wilson & Co., of Mobile, for account of the plaintiffs, to whom C. S. Yarbrough & Co. were largely indebted at the time, and that they took a bill of lading from the carrier to deliver the goods to Robbins, Wilson & Co., for the use and on account of Walton, Whann & Co., and that the purpose was to pay or secure a debt due by the firm of C. S. Yarbrough & Co., the consignor, to Walton, Whann & Co.

If the result of the evidence, no question of credibility or material conflict being involved, is to establish these facts, then upon the taking of the bill of lading from the carrier the property at once passed to Walton, Whann & Co., and was not subject to attachment for a debt of the consignor, C. S. Yarbrough & Co., and the verdict of the jury should have been set aside as contrary to law. Gilmor vs. Grove et al., 8 How., U. S., 429. The effect of a consignment of goods generally is to vest the property in the consignee ; but if the bill of lading is special to deliver

the goods to the consignee for the use of or on account of a third party, the property vests in such third party. There is here a bill of lading, the consignee being Robbins, Wilson & Co., but it is a special consignment on account of Walton, Whann & Co., and the property, so far as the bill of lading is concerned, vested in them. The bill of lading is in evidence, and the rule is that it is sufficient to raise a presumption of property in the person for whose use or account the consignment is made. Lawrence vs. Minturn, 17 How., 107; The Sally Magee, 3 Wall., 457; Halliday vs. Hamilton, 11 Wall., 560; The Vaughn and Telegraph, 14 Wall., 266.

The defendant admits that he holds this cotton as the property of C. S. Yarbrough & Co. He has so attached it, and looking to the testimony we do not see how the jury could find for the defendant except upon the ground of fraud, in that it was a colorable shipment and there was nothing due by C. S. Y. & Co. to Walton, Whann & Co.

The shipment was made in the name of C. S. & T. J. Yarbrough, not in the name of C. S. Yarbrough & Co., who owned the property. There is no evidence here to show any property in this cotton in C. S. & T. J. Yarbrough or T. H. Yarbrough & Co. It cannot be denied that the cotton belonged to C. S. Yarbrough & Co., according to the testimony. It is possible that the facts that the bill of lading was taken by C. S. & T. J. Yarbrough, and that the letter advising of the consignment was signed by C. S. & T. J. Yarbrough, had undue weight with the jury. Looking at the whole testimony these facts might have perhaps been explained. Some of the witnesses who testify to these facts knew nothing of the ownership beyond what appeared on the bill of lading and letter, while the simple reading of the testimony of the other witnesses, who were familiar with the circumstances attending the shipment, and who

made the shipment, shows that C. S. & T. J. Yarbrough did not even claim the cotton, and that the shipment, while in their name, was really a shipment by them as warehouse-men and agents for C. S. Yarbrough & Co. Another portion of the testimony, which we think the jury may have allowed to influence them to find for the defendant, is that which shows, to say the least of it, the extreme bad faith of C. S. Yarbrough & Co. to S. Haas & Co. C. S. Yarbrough & Co. had promised to ship S. Haas & Co. their cotton. They had received advances in money from them, and promised such shipment. This, however, was a mere agreement to ship produce in satisfaction of advances, which did not give the factor, Haas & Co., a right of property in, or the right to possession of, or a lien upon the cotton as against other creditors.

Notwithstanding all this we cannot say, looking at the whole of the record, that any indebtedness of C. S. Y. & Co. to W. W. & Co., is so clearly established under rules of evidence controlling the subject that the verdict of the jury should be set aside.

The plaintiffs here do not produce any itemized account or even any statement of an indebtedness of C. S. Y. & Co. to them. The same is true of C. S. Y. & Co. The witnesses, except one who was connected with that firm, simply say that they, C. S. Y. & Co., were indebted to W. W. & Co. in an amount equal to or in excess of the value of the cotton, while one of the witnesses, who was employed in the firm, states his opinion to be that on a settlement W. W. & Co. would be indebted to C. S. Y. & Co. The plaintiffs, Walton, Whann & Co., prove no indebtedness. They are not witnesses. Whatever claim they had could have been readily proved. According to the marks on the 23 bales of cotton four only were in the usual mark (W. W.) by which the cotton belonging to or intended for W. W. & Co.

was identified. One witness swears that the four bales were received for W. W. & Co. on guano account, and the remaining 19 were purchased by C. S. Y. & Co. and were their property. It is also shown that the firm of C. S. Y. & Co. ceased business and was insolvent upon the day of the shipment; that the shipment, instead of being in the name of the firm, was in another name, made by one of the partners in this manner as he admits because " we (the firm C. S. Y. & Co.) did not wish the cotton to go in our mark for fear some one would attach it for account of C. S. Y. & Co."

A bill of lading is an instrument which states the contract between the shipper and carrier. It does not purport to disclose the relation between consignor and consignee whether the consignment be general or special so far as antecedent transactions or existing debts are concerned. It is not like a deed or a promissory note which recites a consideration between the parties. It is not the practice of the courts to give in a contract of this character, to general statements of insolvent debtors a large amount of confidence or a conclusive effect. " The objection to such evidence is that it could at any time be manufactured and by means of it a creditor might be defeated, as it would in most cases be impracticable to prove a negative or to disprove the consideration said by his debtor to have passed from another." McCain vs. Wood, 4 Ala., 264.

Under all the circumstances narrated we are not prepared to say that the jury erred in finding that the transaction was colorable and fraudulent as against the attaching creditor, and that there was no property or right of possession in plaintiffs. It is hardly necessary to make citations here showing how disinclined this court is to interfere with the

discretion of the Circuit Court and the findings of a jury in that court acting under unexceptionable instructions.

Judgment affirmed.